**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**Kelly D. Jones, OSB No. 074217**
kellydonovanjones@gmail.com
Direct 503-847-4329

Of Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RONALD WILLIAMSON** individually, and on behalf of others similarly situated<br><br>     Plaintiff<br><br>  vs<br><br>**CURALEAF, INC.**<br><br>     Defendant | Case No. No. 3:22-cv-00782-IM<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** |

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION – Page 1 of 40**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.....................................................................4

LR 7.1 CERTIFICATION ...............................................................8

MOTION................................................................................8

INTRODUCTION .......................................................................10

    1. Background ...................................................................10

    2. Summary of the Proposed Settlement and Agreement..............11

        2.1. The Class ............................................................12

        2.2. Class Administration............................................12

        2.3. Class Membership and Compensation................................13

        2.4. Release................................................................14

LEGAL STANDARDS ..........................................................15

ARGUMENTS IN SUPPORT ................................................16

    1. The Class Should Be Granted Settlement Certification............16

        1.1. FRCP 23(a) ......................................................17

            1.1.1. Numerosity................................................17

            1.1.2. Commonality ...........................................18

            1.1.3. Typicality ...............................................19

            1.1.4. Adequacy .................................................21

        1.2. FRCP 23(b)(3) ...................................................22

            1.2.1 Predominance...........................................22

            1.2.2. Superiority ..............................................23

2.  The Proposed Settlement Is Presumptively Fair, Reasonable, and Adequate and Should Be Preliminarily Approved ..................... 26

3.  The Proposed Class Notice Plan and Claims Process Should Be Approved ................................................................................. 32

4.  Plaintiff Should Be Appointed as Class Representative and Plaintiff's Attorneys Should Be Appointed as Class Counsel .... 36

CONCLUSION .................................................................................... 37

## TABLE OF AUTHORITIES

**Cases**

*Agnes v. Papa John's Int'l, Inc.,*
    286 F.R.D. 559 (W.D. Wash. 2012) ...........................................24

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ..................................................... 22, 25, 26

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011)....................................................15

*In re Briseno v. ConAgra Foods, Inc.,*
    844 F.3d 1121 (9th Cir. 2017)..................................................36

*Capps v. Law Offices of Peter W. Singer,*
    No. 15-cv-02410-BAS(NLS), 2016 WL 6833937, 2016 U.S. Dist.
    LEXIS 161137 (S.D. Cal. Nov. 21, 2016) ..................................25

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992)..................................................15

*Diaz v. Tr. Territory of Pac. Islands,*
    876 F.2d 1401 (9th Cir. 1989)..................................................15

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.),*
    926 F.3d 539 (9th Cir. 2019)....................................................17

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    563 U.S. 804 (2011) ................................................................22

*Giles v. St. Charles Health Sys., Inc.,*
    294 F.R.D. 585 (D. Or. 2013) ..................................................17

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)..................................16, 19, 21, 22

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992)............................................... 19, 20

*Harris v. Palm Springs Alpine Estates, Inc.,*
    329 F.2d 909 (9th Cir. 1964)....................................................17

*Jacobson v. Persolve, LLC,*
    No. 14-CV-00735-LHK, 2015 U.S. Dist. LEXIS 73313 (N.D. Cal.
    June 4, 2015) ..........................................................................25

*Keil v. Lopez,*
    862 F.3d 685 (8th Cir. 2017) ...................................................34

*Legge v. Nextel Commc'ns, Inc.*,
    No. CV 02-8676 DSF (VBKx), 2004 WL 5235587, 2004 U.S. Dist.
    LEXIS 30333 (C.D. Cal. June 25, 2004) ....................................18

*Maley v. Del Glob. Technologies Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..........................................30

*McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*,
    No. 3:18-cv-1921-SI, 2020 U.S. Dist. LEXIS 72904 (D. Or. Apr.
    24, 2020) .....................................................................................23

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000).......................................................28

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ....................................................................32

*Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982).......................................................29

*Or. Laborers-Emp'rs Health & Welfare Tr. Fund v. Philip Morris, Inc.*,
    188 F.R.D. 365 (D. Or. 1998) .....................................................17

*Schellhorn v. Timios, Inc.*,
    No. 2:21-cv-08661-VAP-(JCx), 2022 WL 4596582, 2022 U.S. Dist.
    LEXIS 184949 (C.D. Cal. May 10, 2022) ...................................27

*Shuman v. SquareTrade Inc.*,
    No. 20-cv-02725-JCS, 2023 WL 2311950, 2023 U.S. Dist. LEXIS
    34302 (N.D. Cal. Mar. 1, 2023) ..................................................34

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ....................................................31

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003).......................................................15

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)................................................ 24, 26

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................32

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010)........................................ 22, 24, 25

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ....................................................24

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT AND CERTIFICATION – Page 5 of 40**

**Statutes**

Unlawful Trade Practices Act..................................................... passim

ORS 646.608(1) ......................................................................10

ORS 646.608(1)(e) ........................................................ 10, 20, 30

ORS 646.638 ...........................................................................10

ORS 646.638(1) ......................................................................25

ORS 646.638(8) ............................................................... 20, 30

**Rules**

FRCP 23 ............................................................................ 8, 33

FRCP 23(a) ..................................................................... 16, 17

FRCP 23(a)(2) ............................................................. 18, 19, 22

FRCP 23(a)(3) ................................................................. 19, 20

FRCP 23(a)(4) .......................................................................21

FRCP 23(b) ...........................................................................16

FRCP 23(b)(3) ................................................................ passim

FRCP 23(b)(3)(A)-(D) .............................................................24

FRCP 23(c)(2) ........................................................................25

FRCP 23(c)(2)(B) ............................................................. 32, 35

FRCP 23(c)(3) ........................................................................32

FRCP 23(e) ...........................................................................26

FRCP 23(e)(1) ........................................................................26

FRCP 23(e)(2) ........................................................................26

FRCP 23(e)(2)(A)-(D) .............................................................27

FRCP 23(e)(2)(C)(i) ................................................................29

FRCP 23(e)(2)(C)(ii) ...............................................................30

FRCP 23(e)(2)(C)(iii) ..............................................................31

FRCP 23(g) ............................................................................36

**Other Authorities**

Manual for Complex Litigation (4th) § 21.632 ....................................15

## LR 7-1 CERTIFICATION

Defendant does not oppose the relief sought in this motion.

## MOTION

Plaintiff Ronald Williamson (plaintiff or Representative Plaintiff), on behalf of himself and the absent Class Members he seeks to represent, and defendant have agreed on a proposed classwide Settlement of all claims against defendant as set forth in the Class Action Settlement Agreement (Agreement) filed herewith as **Exhibit A**, the terms and definitions of which are incorporated and made part of this motion.

Unopposed by defendant, plaintiff moves the Court to enter a Preliminary Approval Order under FRCP 23, in substantially the same form as the proposed order attached to the Agreement and filed herewith as **Exhibit 1**:

1.    Granting certification of the proposed Settlement Class (Class) as defined in the Agreement and herein for settlement purposes only;

2.    Granting preliminary approval of the proposed Settlement memorialized in the Agreement as being fair, adequate, and reasonable;

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 8 of 40

3.      Approving the Class Notice in substantially similar form as attached to the Agreement and filed herewith as **Exhibits 3** and **4** and directing Notice to be directed to the Class Members;

4.      Approving the proposed claims process and Claim Forms in substantially similar form as attached to the Agreement and filed herewith as **Exhibit 5**;

5.      Approving the proposed Agreement's procedure for Class Members to object to, and to exclude themselves from, the Settlement and the Class;

6.      Setting a specified date that the Final Approval Hearing will occur;

7.      Appointing plaintiff as the Class Representative;

8.      Appointing plaintiff's attorneys as Class Counsel;

9.      Appointing CPT Group, Inc. (CPT) as the Settlement Administrator; and

10.      Granting other relief that is necessary, just, or proper to effectuate the proposed Settlement.

This motion is supported by the Agreement and the exhibits to that Agreement, the Declaration of Kelly D. Jones (Jones Decl.), the Declaration of Michael Fuller (Fuller Decl.), and the Declaration of Julie N. Green Regarding the Notice Plan in Support of Motion for Preliminary Approval of Class Action Settlement (Green Decl.).

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 9 of 40

**INTRODUCTION**

**1.    Background**

On or about August 1, 2021 at the Sweet Relief dispensary in Tillamook, Oregon, plaintiff purchased and later consumed Select CBD Drops (Products) that were manufactured, labeled, distributed, marketed, advertised, and sold by defendant in the regular course of its business. Doc. 1 ¶ 5.

Defendant labeled, marketed, and advertised the Products purchased by plaintiff and the putative Class Members as containing cannabidiol (CBD), which does not produce intoxicating effects. *Id*. ¶ 6.

The Products purchased by plaintiff and the putative Class Members were not labeled, marketed, and advertised as having any, or any substantial amount of, tetrahydrocannabinol (THC). *Id*. ¶ 7.

In reality, the Products purchased by plaintiff and the putative Class Members contained substantial amounts of THC, a psychoactive compound in cannabis that produces intoxicating effects. *Id*. ¶ 8.

On May 30, 2022, plaintiff, on behalf of himself and similarly situated consumers who purchased the Products, brought a claim under ORS 646.638 of Oregon's Unlawful Trade Practices Act (UTPA), alleging that defendant's willful and reckless or knowing misrepresentations that the Products did not contain THC violated ORS 646.608(1)(e) and caused them ascertainable loss of money, entitling each Class Member

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 10 of 40

to the greater of their actual damages or $200 in statutory damages, as well as potential punitive damages, and reasonable fees and costs. *Id*. ¶¶ 17-21.

## 2.     Summary of the Proposed Settlement and Agreement

In October 2022, the parties engaged in an intensive mediation with Retired Oregon Supreme Court Justice Sue Leeson, which resulted in the parties reaching material terms of a proposed classwide settlement and the Agreement. Declaration of Kelly D. Jones (Jones Decl.) ¶ 3. On October 20, 2022, plaintiff filed a Notice of Proposed Class Action Settlement, informing the Court of the proposed Settlement, including that: the Class consists of approximately 500 consumers who purchased the Products; defendant or its insurer would fund a $100,000 settlement and separately pay for the cost of claims administration; Class Members who timely submit verified claims will be entitled to a payment of $150 to $200 each, depending on how many claims are submitted; any unclaimed funds or uncashed checks shall be donated to cy pres recipient Oregon Consumer Justice, plaintiff and the Class Members will release all claims of the type raised in the class action complaint, excluding any claims for negligence or personal injury; and Class Counsel intended to seek Court approval for attorney fees and costs on a common fund basis of no more than 25% of the Settlement Fund. Doc. 8.

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 11 of 40

Over the next seven months the parties worked toward finalizing the Settlement and Agreement and defendant retained, and the parties agreed on, CPT as the parties' chosen class administration entity. The parties worked with CPT to design the Notice Plan and worked out other terms of the Settlement and Agreement. Chiefly as a result of defendant's counsel's demanding schedule, defendant sought and received four extensions of the deadline to submit this motion and supporting documentation supporting preliminary approval of the Settlement. *See* Docs. 10-18.

### 2.1    The Class

Consistent with the complaint, plaintiff requests certification, for settlement purposes only, of a Class defined as: All individual consumers with an Oregon address who purchased one of the defendant's allegedly mislabeled Select CBD Drops on or after June 19, 2021. Ex. A at 3. The Class does not include: any non-individual corporate entity; defendant or any entity that has a controlling interest in defendant; defendant's current or former directors, officers, counsel, or their immediate families; any judge assigned to this case; or any individuals who request exclusion or opt out from the Class or Settlement. *Id*.

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 12 of 40

## 2.2    Class Administration

To ensure that Class Notice, the claims process, and distribution of the Settlement Fund are done properly and effectively, the parties have agreed that defendant would retain an experienced and professional settlement administrator, CPT. CPT is a leader in the settlement administration industry with extensive experience in providing Court-approved notice of class actions and administering various types of notice programs and settlements, that has provided notification and/or claims administration services in thousands of class action cases, and that has disbursed billions of dollars in settlement funds and serviced over 65 million class members. Green Decl. ¶ 5.

## 2.3    Class Membership and Compensation

Based on a diligent review of its records and in conjunction with related investigations, defendant has represented that there are approximately 500 consumers who purchased the Products and are thus potential Class Members. *See* Doc. 8 at 2. Because the identities and contact information of the Class Members are unknown, the Settlement will be distributed using a technologically advanced and effective claims process designed and implemented by CPT, with the oversight of the parties and Class Counsel. *See* Ex. A at 2-3, 11; Green Decl. ¶¶ 8-30.

Per the Agreement, defendant will provide a $100,000 Settlement Fund. Ex. A at 5, 9. Defendant will also pay all necessary costs and

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 13 of 40

expenses of class administration, including the costs incurred and invoiced by CPT, apart from the Settlement Fund. *Id.* at 9-10. Class Counsel have stated their intent to apply for a standard benchmark award of 25% of the Settlement Fund for their time, effort, and expense in securing and facilitating the Settlement on behalf of the Class. *Id.* at 2.

Each verified Class Member who submits a timely Approved Claim—attesting to the fact they purchased one of the Products during the class period—will receive a pro rata distribution from the Settlement Fund, not to exceed $200. *Id.* at 10. Important, the proposed Settlement is not reversionary: meaning no amounts remaining in the Settlement Fund after the distribution process will go back to defendant or its insurer but will instead be paid as a cy pres award to a court-approved Oregon consumer law-oriented nonprofit.[1] *Id.*

### 2.4    Release

Upon final approval, each Class Member who has not timely opted out or excluded themselves from the Settlement and Class will be releasing their claims[2] against defendant and its affiliated entities as

---

[1] The parties have agreed on Oregon Consumer Justice (OCJ) as the cy pres award recipient. Of course, that decision is pending approval of the Court and more information about OCJ will be provided to the Court in the motion for final approval papers, to aid the Court in that process.

[2] Released Claims will not include, *inter alia*, "negligence claims for personal injury."

set forth in the Agreement. *Id*. at 5, 10. Critically, no person will be releasing any claims unless they are a Class Member who fits within the Class Definition, and any Class Member can opt out and pursue individual litigation if they so choose. *Id*. at 5.

## LEGAL STANDARDS

The Ninth Circuit has declared a strong judicial policy for the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011).

The approval of a class action settlement prior to certification takes place in two stages: (1) the Court preliminarily approves the Settlement pending a fairness hearing, temporarily certifies the Class, and authorizes notice to be given to the Class, then after notice is given to the proposed Class Members, (2) at the final approval (or "fairness") hearing, the Court will entertain any Class Member objections as to the terms of the proposed Settlement. *See, e.g.*, *Diaz v. Tr. Territory of Pac. Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989); *see also* Manual for Complex Litigation (4th) § 21.632 (noting that if the parties move for

both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can be, and are, typically combined).

## ARGUMENTS IN SUPPORT

### 1.    The Class Should Be Granted Settlement Certification

Before certifying a class, a court must determine that the proposed class action satisfies four prerequisites: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). FRCP 23(a); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

In addition to meeting the numerosity, commonality, typicality, and adequacy prerequisites under FRCP 23(a), the class action must fall within one of the three types specified in FRCP 23(b). Here, the parties move for certification under FRCP 23(b)(3). To satisfy FRCP 23(b)(3) plaintiff must show that questions of law or fact common to Class Members "predominate over any questions affecting only individual members" (predominance), and that class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy"

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 16 of 40

(superiority). FRCP 23(b)(3); *see also Hanlon*, 150 F.3d at 1019. Because certification assessment is being made in the context of a settlement there are no "manageability" concerns to be addressed here. *See Espinosa v. Ahearn* (*In re Hyundai & Kia Fuel Econ. Litig.*), 926 F.3d 539, 556-57 (9th Cir. 2019).

Because the requirements of FRCP 23(a) and (b)(3) have clearly been satisfied, especially for purposes of settlement only, the Court should enter an order preliminarily certifying the proposed Class.

### 1.1.    FRCP 23(a)

#### 1.1.1  Numerosity

The first requirement for class certification under FRCP 23(a) is that "the class [must be] so numerous that joinder of all members is impracticable." FRCP 23(a)(1). Joinder is impracticable where it would be difficult or inconvenient for all Class Members to join in the action. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). In this district, there is a "rough rule of thumb" that 40 Class Members are sufficient to meet the numerosity requirement. *See Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *Or. Laborers-Emp'rs Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372 (D. Or. 1998). Here, the Class membership is estimated at 500 individual consumers who purchased the Products. *See* Doc. 8 at 2. This number of potential Class Members clearly satisfies the

numerosity requirement under FRCP 23(a)(1), because joinder of all 500

Class Members would be impracticable, if not impossible.

### 1.1.2 Commonality

The commonality requirement for certification mandates that

"there are questions of law or fact common to the class." FRCP 23(a)(2).

Commonality is demonstrated when the claims of all Class Members

"depend upon a common contention . . . that is capable of class-wide

resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The common question "must be of such a nature that it is capable of

classwide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of

the claims in one stroke." *Id*. However, "[e]ven a single common question

will do." *Id*. at 359.

Here, there are many common issues of fact and law given that

defendant's allegedly unlawful conduct involves an identical classwide

incident of recklessly mislabeling the Products. *See, e.g.*, *Legge v. Nextel

Commc'ns, Inc*., No. CV 02-8676 DSF (VBKx), 2004 WL 5235587, 2004

U.S. Dist. LEXIS 30333, at *16 (C.D. Cal. June 25, 2004) (noting that

"commonality is often found in consumer fraud and related actions

where standardized documents and procedures are used."). This

common conduct involves various corresponding common issues of law

and fact including: "[w]hether defendant failed to disclose on the labels

of its Select CBD drops purchased by plaintiff and the class members that the product contained THC and the amount of THC the product Contained;" "[w]hether defendant's conduct described in this complaint violated the UTPA;" "[w]hether defendant maintained adequate quality controls measures, safety procedures, testing policies, training materials, sufficient supervision, and reasonable employment practices;" and "whether defendant's conduct in violation of the UTPA was willful, reckless, or knowing." Doc. 1 ¶ 13.

Therefore, the commonality requirement of FRCP 23(a)(2) is easily satisfied here.

### 1.1.3 Typicality

To satisfy the typicality requirement, the Court must find that the Representative Plaintiff's claims are typical of the claims or defenses of the other Class Members. FRCP 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), the "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To assess typicality, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 19 of 40

unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*. (internal quotation marks omitted).

In this case, there should be no doubt that plaintiff's claims are reasonably co-extensive with those of the absent Class Members. Plaintiff and the Class Members suffered the same or similar injury from the same exact alleged conduct by defendant under the UTPA: ascertainable loss of money in the amount of the Products' purchase price and diminished value in the Products received versus the Products as advertised, caused by defendant's violations of ORS 646.608(1)(e) in failing to disclose that the Products contained substantial amounts of THC instead of purely CBD. Doc. 1 ¶¶ 17-19. If the jury finds that defendant recklessly engaged in conduct in violation of ORS 646.608(1)(e), the Class Members would be entitled to $200 in statutory damages under ORS 646.638(8), as that is greater than their actual damages. Because plaintiff and the Class Members' UTPA claim clearly arises out of the same course of conduct, under the same legal theory and even seeking the same types and amount of damages, the typicality requirement under FRCP 23(a)(3) is readily satisfied.

### 1.1.4 Adequacy

FRCP 23(a)(4) provides that the Court must find that "the representative parties will fairly and adequately protect the interests of

the class." The adequacy requirement involves two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Here, plaintiff shares an obvious common interest with, and does not have any claims adverse to, the other Class Members. Nor are there any cognizable issues that would benefit plaintiff to the detriment of other Class Members. Moreover, as discussed in more detail herein, plaintiff and his counsel have vigorously prosecuted the case thus far, including by researching the claims, deciding the case should be filed as a putative class action, and securing maximum relief for the Class Members as allowed under the UTPA. Moreover, plaintiff's counsel have significant experience litigating consumer protection cases and have been appointed as Class Counsel in numerous cases in this district and in state court. *See* Jones Decl. ¶ 4; Fuller Decl. ¶ 3. Therefore, there should be no question that plaintiff and his counsel will adequately represent the interests of the Class Members.

### 1.2.    FRCP 23(b)(3)

In addition to satisfying the requirements of FRCP 23(a), plaintiff must also show that "questions of law and fact common to the members of the class predominate over any questions affecting only individual

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 21 of 40

members" (predominance) and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). FRCP 23(b)(3).

### 1.2.1. Predominance

The predominance requirement assesses whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022. Predominance measures the relative weight of the common questions as against individual ones. *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (1997). Although "there is substantial overlap between" the test for commonality under FRCP 23(a)(2) and the predominance test under FRCP 23(b)(3), the predominance test "is far more demanding, and asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal quotation marks and citation omitted).

To determine whether common questions predominate, the Court looks at "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809 (2011). "The relevant question at the [certification stage in assessing predominance] is which category of extrinsic evidence—individualized or common—will be outcome determinative of the fact-finder's analysis. If common evidence

dictates the outcome, the Court should grant class certification. If, however, the Court finds that the fact-finder would need to focus primarily on individualized evidence to resolve the ambiguities, the Court should deny class certification." *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc*., No. 3:18-cv-1921-SI, 2020 U.S. Dist. LEXIS 72904, at *21-22 (D. Or. Apr. 24, 2020).

Here plaintiff asserts a single, straightforward UTPA claim against defendant.  There is no need to assess potentially divergent outcomes under different states' laws or to conduct complex individualized damage calculations. Instead, assessing defendant's liability and Class Members' damages would be done through purely common classwide evidence, without the need for individualized class-member-by-class-member inquiries. Because it is abundantly clear that common evidence and issues would control the resolution of this litigation, the predominance requirement of FRCP 23(b)(3) is satisfied.

### 1.2.2. Superiority

The superiority requirement under FRCP 23(b)(3) assesses whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). For this, a court looks to "whether the objectives of the particular class action procedure will be achieved in

the particular case" and engages in "a comparative evaluation of alternative mechanisms of dispute resolution." *Id*. The "superiority test requires the court to determine whether maintenance of [the] litigation as a class action is efficient and whether it is fair. This analysis is related to the commonality test. Underlying both tests is a concern for judicial economy." *Wolin*, 617 F.3d at 1175-76. In order to determine whether a class action is a superior method of resolution, a court may consider, *inter alia*: (1) the Class Members' interests in individually controlling the prosecution of separate actions; (2) the extent of other litigation concerning the controversy; (3) the desirability of concentrating the claims in the particular forum; and (4) the likely difficulties in managing the class action. FRCP 23(b)(3)(A)-(D).

"'Where damages suffered by each putative class member are not large,' the first factor 'weighs in favor of certifying a class action.'" *Agnes v. Papa John's Int'l, Inc*., 286 F.R.D. 559, 571 (W.D. Wash. 2012) (quoting *Zinser v. Accufix Rsch. Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir. 2001)). This is because "[t]he policy 'at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive' for individuals to bring claims." *Id*. (quoting *Amchem*, 521 U.S. at 61); *see also Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 24 of 40

Indeed, "[c]lass action certifications to enforce compliance with consumer protection laws are desirable and should be encouraged." *Capps v. Law Offices of Peter W. Singer*, No. 15-cv-02410-BAS(NLS), 2016 WL 6833937, 2016 U.S. Dist. LEXIS 161137, at *17 (S.D. Cal. Nov. 21, 2016) (internal quotation marks and citation omitted).

The UTPA provides a meritorious plaintiff the greater of their actual damages or $200. ORS 646.638(1). Here there can be no doubt that the amount at stake for putative Class Members is far too small to render an individual action superior to a classwide resolution, especially where the proposed Settlement itself will (almost certainly) provide each Class Member who submits a claim the same $200. In any event, "mandatory notice and opt-out provisions under Rule 23(c)(2) will protect the interests of those proposed class members that may wish to pursue individual claims." *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2015 WL 3523696, 2015 U.S. Dist. LEXIS 73313, at *25 (N.D. Cal. June 4, 2015).

Plaintiff is aware of no other litigation concerning this same controversy under the UTPA, brought by putative members of the proposed Class or otherwise. *See* Jones Decl. ¶ 5; Fuller Decl. ¶ 4. Resolving these claims in a single action in this forum will avoid the potential for inconsistent results, will decrease the expense of litigation, and will promote judicial economy. *See Valentino*, 97 F.3d at 1234. The

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 25 of 40

conduct at issue in this case all occurred within Oregon. As to "manageability," because certification is being assessed in the context of a class settlement, there are no such concerns. *Amchem*, 521 U.S. at 620.

**2.    The Proposed Settlement Is Presumptively Fair, Reasonable, and Adequate and Should Be Preliminarily Approved**

FRCP 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." FRCP 23(e)(1) states that "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." This Court may, ultimately, only approve the parties' proposed Settlement "after a hearing and only on finding that it is fair, reasonable, and adequate." FRCP 23(e)(2). Factors used to assess the "fairness" of a proposed class settlement, at final approval, are whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and, (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

FRCP 23(e)(2)(A)-(D).

However, at this preliminary approval stage—before notice is given to the Class Members, any objections are received, and the final "fairness" hearing occurs—"the inquiry is whether the settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Schellhorn v. Timios, Inc.*, No. 2:21-cv-08661-VAP-(JCx), 2022 WL 4596582, 2022 U.S. Dist. LEXIS 184949, at *15 (C.D. Cal. May 10, 2022) (internal quotation marks and citation omitted). Here the record shows the Settlement is the product of serious, informed, non-collusive negotiation; has no obvious deficiencies; and gives no preferential treatment to any parties, and certainly falls within the range of possible approval. Therefore, at this stage, the Settlement is entitled to a presumption of preliminary approval and notice should be provided to the Class Members to gauge their reaction. However, in an abundance of caution and as a prelude to the final approval assessment, plaintiff will at least briefly address why the final approval factors will ultimately be satisfied here as well.

As to "arm's length negotiations," the Settlement was negotiated with the assistance of a well-respected retired Supreme Court Justice, Sue Leeson. As to the adequacy of the relief to be provided to the Class

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 27 of 40

(and adequacy of representation), courts typically compare the total amount of the Settlement to each Class Members to an estimate of the damages that could be recovered if the case were fully litigated. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Id*. As discussed *supra*, the Agreement provides for a Settlement Fund of $100,000, and that defendant will pay for all costs incurred to administer the Settlement, separate from the Settlement Fund. After subtracting Class Counsel's request for the benchmark 25% of the Settlement Fund, there will $75,000 to be distributed to the Class Members pro rata, not to exceed $200.[3] Through its modernized, narrowly-tailored notice program, CPT expects "to reach approximately 85% of the target audience," resulting in an estimated claims rate of 15%. Green Decl. ¶¶ 29-30. Therefore, each of the Class Members who submits an Approved Claim will (almost certainly) receive $200[4]—the maximum damages allowed under the UTPA.[5] Any balance

---

[3] This $200 cap per Class Member has been imposed because Class Members should not receive more than the maximum they could obtain at trial if successful on the merits.

[4] 15% of 500 estimated Class Members = 75. 75 X $200 = $15,000. Even if the claims rate could somehow reach 50%, the Class Members would still receive $200 each.

[5] It is true that plaintiff's complaint alleges the right to seek punitive damages, as they are available under the UTPA. However, *inter alia*,

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 28 of 40

of the Settlement Fund remaining after the distributions to the Class Members will be distributed as cy pres to a qualified Oregon consumer-related nonprofit organization approved by the Court. Therefore, no amount of the Settlement Fund will revert to defendant or its insurer.

In assessing the "the costs, risks, and delay of trial and appeal" factors in FRCP 23(e)(2)(C)(i), and the overall adequacy of the relief provided for in a proposed class settlement, a court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). Instead, a court should balance these factors with "the benefits afforded to members of the class, and the immediacy and certainty of a substantial recovery." *Maley v. Del Glob. Technologies Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).

To be sure, plaintiff believes that he and the Class Members would *likely* prevail at trial on the merits of the class UTPA claim. Nonetheless, defendant continues to deny liability under the UTPA and

---

given the facts here it is unlikely plaintiff would request punitive damages at trial and, in any event, a potential award of punitive damages by the jury is too speculative as to warrant consideration in this context.

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 29 of 40

certainly plaintiff cannot assert there is no possibility of risk in losing on summary judgment or at trial. For example, in order for the Class Members to be awarded $200 each in UTPA statutory damages, they would have a heightened burden to establish ascertainable economic loss was caused by defendant's "reckless or knowing use or employment" of the conduct in violation of ORS 646.608(1)(e). *See* ORS 646.638(8). Although plaintiff is confident he can prove defendant acted recklessly, when weighed against the reality that through this Settlement the Class Members who choose to file claims will already be receiving the maximum $200 in statutory damages, even a small potential risk the jury may not find that defendant acted with a reckless scienter weighs strongly in favor of the propriety of this Settlement as an eminently fair and reasonable resolution for the Class.

As to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" factor in FRCP 23(e)(2)(C)(ii), because the identities of the other Class Members are largely unknown, a claims process will be required— whether the case proceeds to trial or through this Settlement. As explained in further detail below, and in the CPT declaration filed in support of this motion, CPT has designed a highly effective claims process, which will include the ability for Class Members to verify their membership in the Class.

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 30 of 40

In regard to "the terms of any proposed award of attorney's fees, including timing of payment" factor in FRCP 23(e)(2)(C)(iii), Class Counsel have expressed their intent to apply for 25% of the Settlement Fund (common fund)—which is merely the "benchmark" fee award, within the usual range of 20%-30%. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). In any event, Class Counsel's fee request will be assessed at final approval when any objections to the requested fees by the Class can be considered. There can be no doubt that the Settlement treats plaintiff and each Class Member equitably and equally. Each Class Member will receive the same payment under the Settlement and at the same time. Although it is typical and permissible to do so, the Representative Plaintiff will not be requesting or applying for an incentive award, but will only receive (up to) the same $200 as the other Class Members.

In sum, the proposed Settlement is presumptively reasonable and for the purpose of preliminary approval. As such, the Court should direct notice be provided to the Class Members to assess their reaction to the terms of the Settlement and any Class Members who wish to exclude themselves from the Class can do so.

3.      **The Proposed Class Notice Plan and Claims Process Should Be Approved**

FRCP 23(c)(2)(B), which sets forth the notice requirements for a FRCP 23(b)(3) damages class, provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Specifically, notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). FRCP 23(c)(2)(B). Additionally, due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, the Agreement provides that within 30 days after the Court's entry of the Preliminary Approval Order,

> the  short-form Class Notice will be provided by digital publication online and on social media, which will link to the Settlement Website. The final notice advertisements, and the overall Class Notice Program, will be designed by

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 32 of 40

the Class Administrator; will satisfy Fed. R. Civ. Pro. 23 and constitutional due process requirements by providing Settlement Class Members the best notice practicable given the specific facts and circumstances of this Action and Settlement; will be reasonably calculated to apprise Class members of the important terms and deadlines within this Agreement and the Court's Orders Settlement, and will be subject to the final approval of the Parties and the Court. The details of and an opinion of the adequacy, reasonableness, and effectiveness of the Class Notice Program will be set forth in declarations from the Class Administrator that will be provided to the Parties and will be filed by Class Counsel in support of the Motion for Preliminary Approval and Final Approval.

Ex. A at 6-7. The short form and long form/website Class Notices, designed by CPT, are attached as Exhibits 3 and 4 to the Agreement and filed in support of this motion.

In its declaration, CPT explains, in very specific detail, the modernized, technologically advanced Digital Notice Program that it has designed and will implement to reach the target audience (Class Members) in this case. The Notice Program will include programmatic display; social media ads; online video; paid search; an informational press release; and a more traditional print publication ad in the *Oregonian*, the state's paper of record. Green Decl. ¶¶ 14-20.

CPT will maintain and administer a dedicated settlement website with a case-specific Domain/UR—to be provided on all the Notices—with links to the Agreement, Preliminary Approval Order, the Class Notices, other important case documents, and information necessary to file a

claim electronically. The website address or a hyperlink will also be displayed on all notification formats. *Id*. ¶ 21. CPT will also establish a dedicated 24-hour, toll-free support line to provide general information about the Settlement, answers to frequently asked questions, and information relating to filing a claim or opting out. *Id*. ¶ 22.

With this Notice Program/Plan, CPT expects to reach approximately 85% of the target audience (Class Members) and aims for an effective claims rate of approximately 15%. *Id*. ¶¶ 9-30. This claims rate, if achieved, would be far higher than is typical, and well beyond acceptable. *See*, *e.g.*, *Shuman v. SquareTrade Inc.*, No. 20-cv-02725-JCS, 2023 WL 2311950, 2023 U.S. Dist. LEXIS 34302, at *9 (N.D. Cal. Mar. 1, 2023) (recognizing the success of a 6% claims rate and noting that courts have approved settlements with significantly lower claims rates, even as low as 2%); *see also Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) (explaining that "a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness"). In summary, CPT's "robust notice campaign using various media tactics efforts, including digital display advertisement, social media advertisement, OLV, print publication, paid search, and press release. Based on our experience with similar cases, this notice program is designed to provide the Settlement Class members with notice of their

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 34 of 40

legal rights and comports with due process requirements." Green Decl.

¶ 30.

> As far as the claims process, the Agreement provides that:

> A maximum of one claim, submitted on a single Claim Form, may be submitted by each Claimant. A Claimant must include information in the Claim Form, completed online through the Settlement Website or by hard copy mailed or emails to the Settlement Administrator, confirming, under penalty of perjury, that the Claimant (1) has an Oregon address, and (2) purchased at least one of Defendant's allegedly mislabeled Select CBD drops on or after June 19, 2021. The Settlement Administrator will be responsible for reviewing all claims to determine their validity. Unless otherwise authorized by the Parties, the Settlement Administrator will reject any claim that does not comply in any material respect with the applicable instructions on the Claim Form or this Agreement, or is submitted after the Claims Deadline. The Claim Form will contain a query asking the Claimant whether they prefer to receive any settlement payment via paper check in the mail or via electronic means (e.g., PayPal/Venmo, Direct Deposit, etc.) and if the later, to provide identification of that electronic account to facilitate any such payment.

Ex. A at 7.

> The Claim Forms (one to be completed online and the other if a Class Member requests a paper form) were designed by CPT and are attached to the Agreement, and filed herewith, as Exhibit 5. The Claim Forms and overall claims process and Notice Program are designed effectively to balance the twin goals of ensuring that the Settlement Fund is distributed to the most Class Members as possible and that the

least amount of the fund is directed to individuals who are not Class Members.

Because the parties' agreed claims process, proposed forms, and overall notice plan adequately satisfy all of the criteria set forth in FRCP 23(c)(2)(B), and will provide the best notice that is practicable under the circumstances,[6] the Court should approve the Notice Plan and claims process as set forth in the Agreement and in Exhibits 3 to 5 and order that CPT deliver notice to the Class Members consistent with the Agreement.

### 4.    Plaintiff Should Be Appointed as Class Representative and Plaintiff's Attorneys Should Be Appointed as Class Counsel

Appointment of class counsel turns on whether counsel: (1) has investigated the class claims; (2) is experienced in handling class actions and complex litigation; (3) is knowledgeable regarding the applicable law; and (4) will commit adequate resources to representing the class. FRCP 23(g). These requirements are satisfied here. Plaintiff's attorneys

---

[6] *See also Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1129 (9th Cir. 2017) ("[T]he lack-of-notice concern presumes that some harm will inure to absent class members who do not receive actual notice. In theory, inadequate notice might deny an absent class member the opportunity to opt out and pursue individual litigation. But in reality that risk is virtually nonexistent in . . . low-value consumer class actions. Such cases typically involve low-cost products and, as a result, recoveries too small to incentivize individual litigation.").

have substantial experience in class action and consumer protection litigation and have been appointed as Class Counsel in numerous certified class action cases in this Court and by state courts. Jones Decl. ¶ 4; Fuller Decl. ¶ 3. Plaintiff and his attorneys have investigated the Class claim, have devoted time and resources to this case to date, and will continue to do so until the Class Members obtain just relief—through this Settlement or otherwise. Jones Decl. ¶ 4; Fuller Decl. ¶ 3. Accordingly, plaintiff respectfully requests that he be appointed as the Class Representative and that his attorneys, Kelly D. Jones, of The Law Office of Kelly D. Jones, and Michael Fuller, of OlsenDaines, P.C., be appointed as Class Counsel.

## CONCLUSION

For the foregoing reasons, uncontested by defendant, plaintiff respectfully moves the Court to grant the relief requested above and enter an order in substantially similar form to the proposed order filed with this motion as Exhibit 1: (1) certifying the proposed Class for settlement purposes only; (2) appointing plaintiff as the Class Representative; (3) appointing plaintiff's attorneys as Class Counsel; (4) granting preliminary approval of the proposed Settlement and Agreement; (5) approving the proposed Notices and Claim Forms in Exhibits 3 to 5 and directing CPT to implement the Notice Plan; and (6) setting a date for the Final Approval Hearing.

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 37 of 40

May 17, 2023

**RESPECTFULLY FILED,**

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiff
Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-846-4329

**Michael Fuller, OSB No. 09357**
OlsenDaines
Lead Trial Attorney for Plaintiff
michael@underdoglawyer.com
Direct 503-222-2000

## LR 7-2(b) CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), because it contains 6,715 words, including headings, footnotes and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

May 17, 2023

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiffs
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-846-4329

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION** – Page 39 of 40

## CERTIFICATE OF SERVICE

I certify that this document was served on all necessary parties through this Court's ECF system.

May 17, 2023

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiffs
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-846-4329